# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT HACKWORTH,<br><br>    Plaintiff,<br><br>v.<br><br>H. GERMAN, et al.,<br><br>    Defendants.<br>_____/ | Case No. 1:06-cv-00772-AWI-DLB (PC)<br><br>ORDER STRIKING PLAINTIFF'S SURREPLY<br><br>(Doc. 63)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED IN PART AND DENIED IN PART<br><br>(Doc. 47)<br><br>OBJECTIONS DUE WITHIN THIRTY DAYS |

**I.      Findings**

    **A.      Procedural History**

Robert Hackworth ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action is proceeding on Plaintiff's complaint, filed June 19, 2006, against defendants German and Weiglein for excessive force in violation of the Eighth Amendment and against defendants Martinez and Vella for violation of due process. On September 5, 2008, defendants German, Weiglein, Martinez, and Vella ("Defendants") filed a motion for summary judgment, after receiving an extension of time. (Doc. 47.) On October 24, 2008, Plaintiff filed an opposition to Defendants'

1

1  motion, after obtaining an extension of time. (Doc. 58.)[1]  On November 17, 2008, Defendants

2  filed their reply to Plaintiff's opposition after receiving an extension of time. (Doc. 61.)

3  On December 1, 2008, Plaintiff filed a "Plaintiff Opposition to Defendants Reply to

4  Plaintiff Opposition Motion to Defendants Summary Judgment Motion." (Doc. 63.) The Court

5  treats this filing as a sur-reply. Sur-replies are not generally allowed under the Local Rules of

6  this Court. See Local Rule 78-230(m). The Court neither requested nor granted permission for

7  Plaintiff to file a sur-reply. Plaintiff's sur-reply is HEREBY ORDERED stricken.[2]

**B.     Summary Judgment Standard**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district
> court of the basis for its motion, and identifying those portions of
> "the pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any," which it
> believes demonstrate the absence of a genuine issue of material
> fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a Summary Judgment Motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the

---

[1] Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the Court in an order filed on May 7, 2007. Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). (Doc. 14.)

[2] Out of an abundance of caution, the Court reviewed Plaintiff's sur-reply and finds that it does not change the outcome of the Court's Findings and Recommendations.

district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (*quoting* Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the Motion for Summary Judgment, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam). Nevertheless, inferences are not

drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**C.    Undisputed Facts**[3]

1. Plaintiff is a prisoner of the State of California.
2. During March 2004, Plaintiff was housed in the Security Housing Unit (SHU) at Corcoran State Prison (CSP-Cor).
3. The SHU is a more restrictive area of the prison, where inmates are typically housed once they are found guilty of violating a serious prison rule.
4. Inmates in the CSP-Cor SHU are served their meals in their cells.
5. Two officers delivered breakfast trays and sack lunches to the SHU inmates from a meal cart each day.
6. The officers would deliver a breakfast tray and sack lunch to each inmate through a slot in the cell door referred to as a "food port."

---

[3] "Any party opposing a motion for summary judgment or summary adjudication shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those facts that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial." Local Rule 56-260(b). Defendants contend that Plaintiff's opposition should be stricken for failure to comply with the local rules by not citing a source for each denial. For the most part, Plaintiff does address which facts are disputed and undisputed. To the extent that Plaintiff fails to admit or deny facts, Plaintiff's verified amended complaint may be treated as an opposing affidavit to the extent that it is verified and set forth admissible facts (1) within Plaintiff's personal knowledge and not based merely on Plaintiff's belief and (2) to which Plaintiff is competent to testify. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998); McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987); Lew v. Kona Hosp., 754 F.2d 1420, 1423 (9th Cir. 1985). Plaintiff's opposition is not verified under the penalty of perjury, and thus cannot be used as an opposing affidavit.

| | |
|---|---|
| 7. | The food port can be locked and unlocked by the officer from the outside of the cell. |
| 8. | Prison policy requires that the food port be kept locked unless an officer is passing food or necessary materials through the slot to the inmate, or receiving materials back from the inmate. |
| 9. | The procedure for an inmate to return his finished breakfast tray at CSP-Cor SHU was for the officer to unlock the food port, have the inmate place the tray in the food port and retreat to the back of the cell. The officer would then approach the cell, collect the tray, lock the food port and continue on to the next cell. |
| 10. | On March 9, 2004, at approximately eight o'clock in the morning Officers Weiglein and German had delivered meals to the inmates in the SHU at CSP-Cor, and were in the process of collecting the empty breakfast trays. |
| 11. | Plaintiff became agitated because he discovered that his sack lunch had no cookies in it. |
| 12. | Plaintiff complained to Officer German that his lunch had no cookies. |
| 13. | Officer German and Weiglein continued to collect the rest of the inmates' empty trays. |
| 14. | Plaintiff was given the option to exit his cell to receive medical treatment, but he chose to rinse off the pepper spray in the sink in his cell himself, and declined any medical treatment. |
| 15. | Plaintiff was charged with a disciplinary infraction in connection with this incident for allegedly throwing his tray at Officer German. |
| 16. | Plaintiff was found guilty of this offense at a hearing on April 30, 2004. On July 7, 2004, the Institutional Classification Committee assessed Plaintiff a nine month SHU term for the offense. |
| 17. | Plaintiff filed an administrative grievance complaining that he had not received the time allowed under prison regulations to review the report drafted by his investigative employee before the hearing took place. The CSP-Cor Chief |

|     | Disciplinary Officer agreed that Plaintiff had not received the time proscribed by these rules to review the report before his hearing, vacated the results of the first hearing, and ordered that Plaintiff have a new hearing. |
| --- | --- |
| 18. | At the new hearing, Plaintiff was found not guilty. |
| 19. | As a result of the rehearing, on November 9, 2004, the Institutional Classification Committee vacated the SHU sentence originally imposed. |
| 20. | Defendant Weiglein did not touch, hit, kick, or contact Plaintiff in any way. |

### D. Analysis

#### *1. Summary of Complaint*

In his complaint, Plaintiff alleges that on March 9, 2004 defendants German and Weiglein passed out meals to the inmates. Plaintiff alleges that his lunch lacked cookies, and Plaintiff threatened to file a 602 grievance against officer German. Plaintiff alleges that officer German pushed the tray back into Plaintiff's cell. Plaintiff alleges that he replaced the tray in the food port slot. Plaintiff alleges that as he turned his back on the officers, defendant German sprayed Plaintiff in the back and head with pepper spray. Plaintiff alleges that defendant Weiglein encouraged defendant German to spray Plaintiff and failed to act to stop defendant German.

Plaintiff alleges that defendant Martinez falsely accused Plaintiff of throwing a tray. Plaintiff alleges that on April 30, 2004, Plaintiff received a disciplinary hearing before defendant Vella for allegedly throwing his tray at German. Plaintiff alleges that he did not receive 24 hour notice prior to the hearing and thus did not attend. Plaintiff alleges that he received a nine month SHU term and suffered a 90 day loss of privileges.

#### *2. Claim for Relief - Excessive Force*

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is

6

evident.  Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)).  However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9.  "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7.  "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted).  "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

Plaintiff is a prisoner of the State of California.  (Undisputed Fact (UF) 1.)  During March 2004, Plaintiff was housed in the Security Housing Unit (SHU) at Corcoran State Prison (CSP-Cor).  (UF 2.)  The SHU is a more restrictive area of the prison, where inmates are typically housed once they are found guilty of violating a serious prison rule.  (UF 3.)  Inmates in the CSP-Cor SHU are served their meals in their cells.  (UF 4.)  Two officers delivered breakfast trays and sack lunches to the SHU inmates from a meal cart each day.  (UF 5.)  The officers would deliver a breakfast tray and sack lunch to each inmate through a slot in the cell door referred to as a "food port." (UF 6.)  The food port can be locked and unlocked by the officer from the outside of the cell.  (UF 7.)  Prison policy requires that the food port be kept locked unless an officer is passing food or necessary materials through the slot to the inmate, or receiving materials back from the inmate.  (UF 8.)  The procedure for an inmate to return his finished breakfast tray at CSP-Cor SHU was for the officer to unlock the food port, have the inmate place the tray in the

7

food port and retreat to the back of the cell. The officer would then approach the cell, collect the tray, lock the food port and continue on to the next cell. (UF 9.) On March 9, 2004, at approximately eight o'clock in the morning defendants Weiglein and German had delivered meals to the inmates in the SHU at CSP-Cor, and were in the process of collecting the empty breakfast trays. (UF 10.) Plaintiff became agitated because he discovered that his sack lunch had no cookies in it. (UF 11.) Plaintiff complained to defendant German that his lunch had no cookies. (UF 12.) Defendants German and Weiglein continued to collect the rest of the inmates' empty trays. (UF 13.)

Defendants and Plaintiff offer different sequences of events from when Plaintiff discovered that his lunch had no cookies. Defendants contend that Plaintiff complained to defendant German that his lunch had no cookies, and would not return his tray. (Doc. 47-4, Exh. B, H. German's Decl., ¶ 5.) Several minutes later, Plaintiff called out to defendant German that he would return his tray. (Id. ¶ 7.) Defendant German approached Plaintiff's cell and unlocked his food port to allow him to place his tray in the food port, but Plaintiff refused to retreat to the back of his cell. (Id., ¶ 8.) Defendant German then observed Plaintiff move his arm in a threatening gesture with the food tray. (Id. ¶ 9.) Defendant German observed Plaintiff reach his arm out of the cell through the food port with the tray in his hand. He moved the tray in a forward motion as if to throw the tray at Defendant German. (Id.) Therefore, Defendant German administered a one-second burst of pepper spray toward Plaintiff. (Id. ¶ 10.) After Defendant German administered the one-second burst of pepper spray toward Plaintiff, Plaintiff continued the forward movement of his arm, actually throwing the tray. Defendant German had to step aside to avoid being hit with the tray as it fell to the ground. Plaintiff then moved to the back of his cell and Defendant German locked the food port. (Id. ¶¶ 11, 12.) A prison nurse checked Plaintiff immediately after this incident, noted that Plaintiff had been exposed to pepper spray on his neck and shoulder area, but had no visible injuries. (Doc. 47-8, Defs.' Exh. E, CDC Form 7219, March 9, 2004.)

Plaintiff contends that he set his tray in the food-port for defendants German and Weiglein to pick up, but defendant German pushed the tray back into Plaintiff's cell, stating that

8

Plaintiff should keep the tray. (Pl.'s Dep., April 21, 2008, p. 15:11-14.) The tray fell to the floor. (Id., p. 29:17-20.) Plaintiff then put the tray back in the food-port. (Id., p 29:20-21.) Plaintiff turned around to walk back toward his bed. (Id., p. 30:9-10.) Plaintiff was then sprayed in the back and the back of his head by defendant German. (Id., p. 30:10-11.) Plaintiff's injuries were also visible as big purple and red welts on his back. (Id., p. 36:5-6.)

Plaintiff was given the option to exit his cell to receive medical treatment, but he chose to rinse off the pepper spray in the sink in his cell himself, and declined any medical treatment. (UF 14.) Defendant Weiglein did not touch, hit, kick, or contact Plaintiff in any way. (UF 20.)

Defendants argue that German and Weiglein are entitled to summary judgment on the grounds that 1) defendant German used reasonable, minimal force under the circumstances; 2) defendant Weiglein used no force; and 3) even if Weiglein should have acted, he did not have sufficient time to do so.

**A.     Defendant German**

Defendants contend that according to the Hudson factors, defendant German acted reasonably under the circumstances. (Doc. 47, Defs.' Mot. for Sum. J., pp. 7-8.) Defendants contend that Plaintiff's injury was minor because he declined medical treatment. (Doc. 47, p. 7:2-4.) Defendants contend that there was need for force because Plaintiff had an agitated demeanor and refused to retreat to the back of his cell. (Id., p. 7:11-14.) Defendants contend that the relationship between need and the amount of force used was appropriate because disruptive behavior "has serious implications in a high security unit of a prison." (Id., pp. 7:19-8:7.) Defendants contend that officer German made efforts to temper the severity of the forceful response by immediately notifying his superior and bringing a nurse to offer medical treatment. (Id., p. 8:8-11.) Defendants argue that there is no dispute as to defendant German's "legitimate perception that Plaintiff was attempting to throw the tray at him." (Id., p. 7:10-11.) However, Plaintiff's submitted evidence creates a genuine dispute of material facts.

Plaintiff stated that defendant German pushed the food tray back into the cell. (Pl.'s Dep., p. 15:11-14.) Plaintiff then placed the tray back in the food port. (Id., p. 15:16.) Plaintiff turned his back and walked away, at which point defendant German pepper sprayed him. (Id., p. 15:17-

9

18.) Plaintiff denies that he tried to throw his tray at defendant German. (Doc. 58, Pl.'s Opposition, Exh. F, Pl.'s Decl., pp. 86-87.)

As stated previously, the evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Accepting Plaintiff's facts as true for purposes of summary judgment, there exists a genuine dispute of material fact that precludes finding in Defendant German's favor.

Maintaining discipline in a high level security unit is an important penological interest. See Whitley v. Albers, 475 U.S. 321-22 (1986) ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to present internal order and discipline and to maintain institutional security.") (citing Bell v. Wolfish, 441 U.S. 520, 547 (1979)). However, Plaintiff alleges that defendant German pepper sprayed Plaintiff without any legitimate penological purpose. There thus remains a disputed material fact as to whether defendant German acted with deliberate indifference in violation of the Eighth Amendment by using pepper spray on the Plaintiff. Based on the facts presented, drawn in favor of the Plaintiff, the Court finds that Defendants' motion for summary judgment regarding defendant German should be DENIED.

**B.     Defendant Weiglein**

Defendants first contend that defendant Weiglein used no force and thus committed no constitutional violation against Plaintiff. (Doc. 47, p. 8:20-24.) Defendants also contend that even if defendant Weiglein had the obligation to prevent defendant German from pepper spraying Plaintiff, Weiglein did not have sufficient time to act because the incident occurred in at most three seconds. (Id., pp. 8:28-9:2.) The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). An officer can be held liable for failing to intercede

only if he had a "realistic opportunity" to intercede. Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000); Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995).

//

At his deposition, Plaintiff attested that:

> When I turned my back to Officer German, Weiglein knew that German was going to pepper spray me because he took the pepper spray out with Weiglein standing there. Weiglein knew I hadn't done anything. He could have just closed the tray slot. Officer German couldn't have sprayed the pepper spray through the tray slot because it's metal. He would then have to hold the pepper spray back and went [sic] on down the tier, but he did not do that. He stood there and egged Officer German on to pepper spray me.

(Pl.'s Dep., April 21, 2008, pp. 45:20-46:4.)

Thus, there is a material dispute as to whether defendant Weiglein was a mere bystander to defendant German's actions, or aware that a constitutional violation would occur and encouraged its commission. The Court finds that based on the facts presented, drawn in favor of the Plaintiff, Defendants' motion for summary judgment regarding defendant Weiglein should be DENIED.

### 3. *Claim for Relief - Due Process*

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Sandin v. Conner, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours

11

between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994).

There is no dispute as to a violation of the Wolff requirements. Plaintiff did not receive 24 hours written notice prior to the April 30, 2004 disciplinary hearing. (Doc. 47-7, Exh. C, Attach. 3, p. 33.) Defendants also do not contend that Plaintiff had no liberty interest in avoiding SHU confinement. Rather, Defendants contend that Plaintiff did not suffer any deprivation of a liberty interest because Plaintiff never served any time in the SHU for the alleged due process violation. (Doc. 47, p. 10:12-16.)

Plaintiff was charged with a disciplinary infraction in connection with the incident of allegedly throwing his tray at defendant German. (UF 15.) Plaintiff was found guilty of this offense at a hearing on April 30, 2004. On July 7, 2004, the Institutional Classification Committee assessed Plaintiff a nine month SHU term for the offense. (UF 16.) Plaintiff filed an administrative grievance complaining that he had not received the time allowed under prison regulations to review the report drafted by his investigative employee before the hearing took place. The CSP-Cor Chief Disciplinary Officer agreed that Plaintiff had not received the time proscribed by these rules to review the report before his hearing, vacated the results of the first hearing, and ordered that Plaintiff have a new hearing. (UF 17.) At the new hearing, Plaintiff was found not guilty. (UF 18.) As a result of the rehearing, on November 9, 2004, the Institutional Classification Committee vacated the SHU sentence originally imposed. (UF 19.)

Defendants contend that Plaintiff never served any of the SHU sentence originally imposed for the alleged battery on defendant German, and Plaintiff received no credit loss for the disciplinary action related to the incident. Defendants contend that although the SHU term was

1  imposed on July 7, 2004, and not revoked until November 9, 2004, and Plaintiff did spend a
2  portion of this time in the SHU, it was not attributable to the sentence imposed for the battery
3  against defendant German.  Instead, Defendants contend, Plaintiff was serving consecutive SHU
4  terms for multiple offenses that occurred previously at other prisons. (Doc.47-5, Defs.' Exh. C ¶¶
5  4, 7, 8, Attachs. 1, 2.)  Defendants contend that Plaintiff remained in administrative segregation
6  ("ad seg") at Corcoran during 2004, for a new offense, again unrelated to the incident with
7  defendant German. (Defs.' Exh. C ¶ 5, Attach. 2.)  Defendants contend that because Plaintiff
8  never suffered an actual deprivation of a constitutionally protected liberty interest, his due
9  process rights were not implicated.  (Doc. 47, p. 11:1-5.)

        Defendants submit a declaration by J. Cordova, the litigation coordinator at California
Substance Abuse and Treatment Facility and State Prison at Corcoran, California.  (Doc. 47-5,
Exh. C, J. Cordova Decl., ¶ 1.)  Cordova attests that Plaintiff was received at the Corcoran SHU
on July 13, 2003, to serve a SHU sentence for a rule violation that occurred at High Desert State
Prison.  (Id., ¶ 4.)  Cordova attests that shortly after arriving at the Corcoran SHU, Plaintiff
committed a new offense on July 30, 2003.  (Id.)  Cordova attests that Plaintiff received an
additional nine months in the SHU.  (Id.)  Cordova attests that Plaintiff completed consecutive
SHU sentences on August 2, 2004, and was released from the Corcoran SHU on August 2, 2004.
(Id.; Exh. C, Attach. 1, p. 5.)  Cordova attests that Plaintiff was placed in administrative
segregation on August 3, 2004, because of a July 28, 2004 rules violation report for attempted
battery ("RVR 7-28-04").  (Doc. 47-5, J. Cordova Decl., ¶ 5; Doc. 47-7, Exh. C, Attach. 2, p. 2.)
Cordova attests that Plaintiff was released from SHU status on August 2, 2004, and remained on
ad seg status through November 9, 2004, when the Institutional Classification Committee
vacated the SHU sentence originally imposed for RVR 3-9-04.  (Doc. 47-5, J. Cordova Decl., ¶
7.)  Cordova attests that Plaintiff remained at Corcoran until June 12, 2007 and in administrative
segregation ("ad seg") during this time for a variety of prison disciplinary infractions.  (Id., ¶ 9.)
Defendants rely on Cordova's declaration to show that Plaintiff was in ad seg from August 3,
2004 onward.  (Doc. 47, Defs.' Mot. Sum. J., p. 10:24-26; Doc. 47-5, J. Cordova Decl., ¶ 5; Doc.
61, Defs.' Reply, pp.3:26-4:3.)

1 | Defendants have met their initial burden as the moving party. The burden shifts to
2 | Plaintiff to demonstrate that their still exists a material issue of fact in dispute.

Plaintiff contends that he did not attend the hearing on April 30, 2004 because he did not receive 24 hour prior notice. (Pl.'s Dep., p. 51:1-22.) Plaintiff contends that on July 7, 2004, the Institutional Classification Committee ("ICC") assessed Plaintiff a 9 month SHU term for the March 9, 2004 Rules Violation Report ("RVR 3-9-04"), and imposed a minimum eligibility release date ("MERD") of May 2, 2005. (Id., pp. 56:17-58:2; Id., p. 59:6-7.) Plaintiff argues that after he finished his SHU term with a MERD of August 2, 2004, Plaintiff started the SHU term imposed on him by the ICC on July 7, 2004. (Doc. 58, Pl.'s Opposition, p. 9:22-27.) Plaintiff argues that RVR 3-9-04 was not reheard until September 9, 2004, and that the ICC did not rescind Plaintiff's SHU term until November 9, 2004. (Id., pp. 9:25-10:1.) Plaintiff argues that "Plaintiff did 3 months of the SHU term impose [sic] on him for RVR 3-9-04 and that puts indispute [sic] defendants [sic] claim of [sic] Plaintiff did none of the SHU term." (Id., p. 10:1-5.) Plaintiff thus contends that from August 3, 2004 until November 9, 2004, Plaintiff was confined in the SHU because of RVR 3-9-04.[4]

Plaintiff relies on a CDC 128G report dated July 7, 2004, and the November 9, 2004 CDC 128G report. (Doc. 58, Pl.'s Opposition, Exh. D, pp. 80-82.) The July 7, 2004 CDC 128G indicates that the ICC imposed a SHU term of nine months because of RVR 3-9-04. (Doc. 58, Pl.'s Opposition, Exh. D, p. 80.) The November 9, 2004 CDC 128G indicates that the ICC rescinded its action taken on July 7, 2004, vacated the SHU term assessed, and retained Plaintiff in ad seg for 180 days "pending the adjudication of RVR 7-28-04 for Attempted Battery on a PO." (Id., p. 82.) Plaintiff relies upon these two reports to contend that he was in the SHU for at least three months. However, these reports do not indicate that Plaintiff was in SHU confinement from August 3, 2004 through November 9, 2004. While the July 7, 2004 CDC 128G indicated that Plaintiff was supposed to start a nine month SHU term with an MERD of

---

[4] The Court notes again that Plaintiff's opposition was not verified and cannot be considered as evidence for purposes of summary judgment. See Moran v. Selig, 447 F.3d 748, 759-60 (9th Cir. 2006) (pleading and opposition must be verified to constitute opposing affidavits). His arguments raised in opposition are therefore not evidence.

14

May 2, 2005, it is unclear from the report itself whether Plaintiff actually served any of this SHU term. The November 9, 2004 CDC 128G indicated that the SHU term assessed in the July 7, 2004 CDC 128 G was rescinded and that Plaintiff was to continue ad seg status for an unrelated RVR. It does not indicate that Plaintiff was in the SHU from August 3, 2004 until November 9, 2004. Defendants have presented evidence that Plaintiff was in ad seg from August 3, 2004 through November 9, 2004. (Doc. 47-5, Exh. C, J. Cordova Decl., ¶ 7.) As stated previously, Plaintiff's arguments in his opposition are not evidence and thus cannot be used as an opposing affidavit. Plaintiff cannot rely on these reports to demonstrate a genuine issue of material fact as to any alleged due process violation. Plaintiff's arguments in opposition are therefore unsupported by the evidence.

Without an alleged deprivation of a liberty interest, there exists no triable issue of fact as to Plaintiff's due process claim. Accordingly, the Court finds that Defendants' motion for summary judgment regarding defendants Martinez and Vella should be GRANTED.[5]

### 4. *Qualified Immunity*

Defendants contend that they should receive qualified immunity for their alleged actions. Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In ruling upon the issue of qualified immunity, one inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001), *overruled in part by* Pearson v. Callahan, 129 S. Ct. 808, 813 (2009) ("Saucier procedure should not be regarded as an inflexible requirement"). The other

---

[5] Plaintiff also contends that RVR 3-09-04 was reduced to D level offense and that he suffered a loss of good time credits. (Doc. 58, p. 11:2-8.) Plaintiff contends that this demonstrates a deprivation of due process. A deprivation that affects the duration of a prisoner's sentence, such a the loss of good time credits may, in some circumstances, implicate due process concerns. Sandin, 515 U.S. 472, 477-78 (citing with approval Wolff v. McDonnell, 418 U.S. 539, 557 (1974) (state-created interest in shortened prison sentence is an interest of "real substance")). Such a liberty interest is limited to circumstances in which time credits were revoked as a disciplinary action; however, such a claim is not cognizable under § 1983 unless the result of such disciplinary action has been previously overturned or otherwise invalidated. Edwards v. Balisok, 520 U.S. 641, 646 (1997). The Court declines to consider this issue as it is not presently before the Court.

15

inquiry is whether the right was clearly established. Saucier, 533 U.S. at 201. The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202 (citation omitted). In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

Based on the above analysis, the Court finds that the facts alleged, with all inferences in favor of the opposing party, indicate that defendants German and Weiglein's conduct would violate a constitutional right, and that these rights were clearly established. See Hudson, 503 U.S. at 6-7 (Eighth Amendment proscribes excessive force). Defendants German and Weiglein are thus not entitled to qualified immunity. Because the Court recommends that the motion for summary judgment should be granted as to Defendants Martinez and Vella, the Court will not reach their claim of qualified immunity.

**II.    Conclusion and Recommendation**

Accordingly, the Court HEREBY ORDERS that Plaintiff's Sur-Reply, filed on December 1, 2008, is STRICKEN. Further, the Court HEREBY RECOMMENDS that Defendants' motion for summary judgment, filed on September 5, 2008, be 1) DENIED in part as to Defendants German and Weiglein and 2) GRANTED in part as to Defendants Martinez and Vella.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to

///

///

Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **April 22, 2009**     /s/ **Dennis L. Beck**
UNITED STATES MAGISTRATE JUDGE