1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ROBERT HACKWORTH,**                              ) | **1:06-CV-0772 AWI DLB P** |
|                                                                          ) | |
|                     **Plaintiff**,                               ) | **AMENDED PRETRIAL ORDER** |
|                                                                          ) | |
|           **v.**                                                    ) | **Telephonic Trial Confirmation** |
|                                                                          ) | **Hearing:  July 26, 2010, 3:00 p.m.** |
|                                                                          ) | |
| **H. GERMAN, et al.,**                               ) | **Motions In Limine Hearing:** |
|                                                                          ) |               **August 31, 2010, 8:30 a.m.** |
|                     **Defendants**                          ) | **Courtroom 2** |
|                                                                          ) | |
|                                                                          ) | **Trial:  August 31, 2010, 9:00 a.m** |
| _____ ) | **Courtroom 2** |

19       This action proceeds on Plaintiff Robert Hackworth's original complaint filed on

20  June 19, 2006.  Plaintiff Hackworth, an inmate in the custody of the California Department of

21  Corrections, brings this civil rights action against correctional officials for violations of his civil

22  rights.  Various court orders have been issued during the pendency of this action that have

23  narrowed the remaining legal issues for trial to the following:   Whether Defendant Weiglein

24  and/or Defendant German violated Plaintiff's Eighth Amendment rights by using excessive force

25  on Plaintiff.

26       On April 26, 2010 the court conducted a telephonic trial confirmation hearing.

27  For good cause shown, the court granted Plaintiff's request to continue the trial date.  Having

28  continued the trial, the court now issues this Amended Pretrial Order.

**I.  Jurisdiction and Venue**

The court has subject matter jurisdiction over this federal civil rights action.  28 U.S.C. § 1331.  Venue is proper because the conduct allegedly occurred in this judicial district.

**II.  Jury Trial**

All parties have requested trial by jury.  This action shall be tried by a jury of eight.

**III.  Facts**

    **A.  Undisputed Facts**

1.  On March 9, 2004, Plaintiff was and inmate in the Department of Corrections and Rehabilitation.  Plaintiff was housed at Corcoran State Prison, 4A-Facility, Building 4A-2Right, in cell #28.   This cell was within Corcoran State Prison's Security Housing Unit (SHU).

2.  On March 9, 2004, Defendants Weiglein and German were working as correctional officers at Corcoran State Prison in the SHU.

3.  Officers in the SHU serve inmates their meals through an opening in the cell door called a food port, and the officers must then retrieve the empty trays through the same food port opening.

4.  At approximately 8:00 a.m. on March 9, 2004, Defendants Weiglein and German approached Plaintiff's cell to retrieve his empty breakfast tray.

5.  Plaintiff and Defendant German had a discussion about cookies that were missing from Plaintiff's lunch.   Plaintiff expressed dissatisfaction with Defendant German's response concerning the missing cookies.

6.  Defendants German and Weiglein continued collecting other inmates' trays, and returned to Plaintiff's cell. When the officers returned to Plaintiff's cell Defendant German sprayed pepper spray at Plaintiff, before securing the food port.

7.  Defendants German and Weiglein reported the incident to their supervisor and

1    called a nurse to evaluate Plaintiff.

8.    The supervisor and the nurse approached Plaintiff's cell door and offered to
provide Plaintiff with medical care and conduct a videotaped interview. Plaintiff
refused to exit his cell for medical treatment or to participate in the videotaped
interview.

9.    Plaintiff's Additional Proposed Undisputed Facts

a.    When he spoke to Defendant German about the missing cookies,
Defendant German told him to write a 602 appeal to the kitchen staff; but
Plaintiff told Defendant German we would write a 602 appeal against
Defendant German.

b.    Plaintiff did not leave his cell for decontamination because he was in fear
for his safety.

c.    Defendant German wrote a 115 Rules Violation Report.   Defendant
Weiglein wrote a supplement 115 Report.

d.    Plaintiff received another 9 month SHU term from the events of March 9,
2004.   This term was rescinded on November 9, 2004.

e.    Plaintiff was found guilty of the 116 Rules Violation Report on April 30,
2004.

f.    On July 30, 2004, Plaintiff's appeal was granted and the guilty finding was
overturned.

h.    On September 9, 2004, Plaintiff was found not guilty of the 115 Rules
Violation Report of attempted batter.

10.    Defendants' Proposed Undisputed Facts

a.    The SHU is a restrictive form of confinement where inmates are housed
when they have committed serious prison disciplinary violations.

b    Staff in the SHU are instructed that it is critical for them to receive back
the empty plastic food trays to prevent inmates from breaking them up and
using them as weapons.

    c.      Defendant German was unable to collect Plaintiff's empty tray.

    d.      After Plaintiff refused to leave his cell, the nurse evaluated Plaintiff to the extent possible without Plaintiff exiting the cell, and provided him with instructions on how to wash off the pepper spray.

**B. Disputed Facts**

1. Whether when Defendant German approached Plaintiff's cell and unlocked his food port to allow him to place his tray in the food port, Plaintiff refused retreat to the back of his cell.

2. Whether Plaintiff tried to hit Defendant German by moving his arm in a threatening gesture with the food tray and reached his arm out of the cell through the food-port with the tray in his hand.

3. Whether Defendant German reasonably perceived Plaintiff's movement with the tray to be threatening.

4. Whether Plaintiff threw the tray at Defendant German or tried to through the try at Defendant German.

5. Whether Defendant German sprayed a one-second burst of pepper spray at Plaintiff in response to what he perceived as Plaintiff's threatening behavior.

6. Whether Defendant German applied reasonable force.

7. Whether Defendant Weiglein could or should have prevented Defendant German from spraying pepper spray at Plaintiff.

8. Whether Defendant Weiglein participated in or was responsible for Defendant German's use of force.

9. Whether Defendants German and Weiglein used excessive force against Plaintiff.

10. Whether Plaintiff suffered any injury from the one-second burst of pepper spray.

11. Whether Defendants' actions were done with malice and intent to cause Plaintiff harm.

12. Plaintiff's Additional Disputed Facts

    a.      Whether Defendants lied to cover up there excessive force against

1      Plaintiff.

2   13. Defendants' Additional Disputed Facts

3     a.  Whether Plaintiff became agitated because he discovered that his sack

4        lunch had no cookies in it, complained to Defendant German, and claimed

5        that he would not return his tray until Defendant German provided him

6        with cookies.

7     b.  Whether Defendant German ever taunted Plaintiff or refused to accept

8        Plaintiff's tray.

9  **C.  Disputed Evidentiary Issues**

10    Plaintiff states that there are the following evidentiary issues:

11    1.  The truth of J. Cordova's September 4, 2008 declaration.

12    2.  The truth of Defendant German's and Defendant Weiglein's August 28,

13       2008 and September 4, 2008 declarations.

14    3.  Plaintiff will dispute the admissibility of other instances of his alleged

15       misconduct while in prison because they are irrelevant and Plaintiff is

16       innocent.

17    4.  Plaintiff will seek to admit prior discipline records and 602 reports filed

18       against Defendants that concern excessive force or unprofessional conduct.

19    Defendants state that there are the following evidentiary issues:

20    1.  Defendants will object to evidence relating to claims and Defendants that

21       have previously been dismissed from this lawsuit.

22    2.  Defendants will object to inadmissible hearsay, along with irrelevant

23       immaterial, or incompetent evidence.

24    3.  Defendants plant to impeach Plaintiff with his prior felony convictions.

25    4.  Defendants state that if Plaintiff attempts to offer evidence of good

26       character, Defendants will impeach him with evidence of his bad

27       character.

28    5.  Defendants plan to question Plaintiff about issues affecting his credibility,

including prior bad acts or acts of dishonesty.

**IV.  Relief Sought**

Plaintiff seeks $10,000 from each Defendant for pain and suffering and $10,000 from each Defendant for mental and emotional distress.   Plaintiff seeks punitive damages in the amount of $200,000 from each Defendant.  Plaintiff also seeks $210.00 for each month after Plaintiff's girlfriend left him because his SHU term was extended.    Plaintiff also seeks the costs of this lawsuit.

Defendants seek judgment in this case, costs, and such other relief as the court deems appropriate.

**V.  Points of Law**

**A.  Excessive Force**

The Eighth Amendment prohibits cruel and unusual punishment in the prison setting.   This includes the use of excessive force.   "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." "  Hudson v. McMillian, 503 U.S. 1, 78 (1992).  "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response."  Id.  (internal quotation marks and citations omitted).  "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it."  Id.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ."  Hudson, 503 U.S. at 8.  "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency."  Id. (internal quotation marks and citations

omitted).  The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident.  <u>Id</u>. at 9; <u>see also</u> <u>Oliver v. Keller</u>, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines <u>de minimis</u> uses of force, not <u>de minimis</u> injuries)).  However, not "every malevolent touch by a prison guard gives rise to a federal cause of action."  <u>Hudson</u>, 503 U.S. at 9.  "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition <u>de minimis</u> uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  <u>Id</u>. at 9-10 (internal quotations marks and citations omitted).

**B.  Punitive Damages**

A jury may award punitive damages under 42 U.S.C. § 1983 either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others.  <u>Smith v. Wade</u>, 461 U.S. 30, 56 (1983);  <u>Dang v. Cross</u>, 422 F.3d 800, 807 (9th Cir. 2005).   However, punitive damages are not to be "awarded as of right, no matter how egregious the defendant's conduct."  <u>Smith</u>, 461 U.S. at 52; <u>Engquist v. Oregon Dept. of Agriculture</u>, 478 F.3d 985, 1003 (9th Cir. 2007).   Rather, "[t]he focus is on the character of the tortfeasor's conduct-whether it is of the sort that calls for deterrence and punishment over and above that provided by compensatory awards."  <u>Smith</u>, 461 U.S. at 54.

**C.  Qualified Immunity**

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Pearson v. Callahan</u>, 129 S.Ct. 808, 815 (2009); <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982); <u>Rodis v. City, County of San Francisco</u>, 558 F.3d 964, 968 (9th Cir. 2009); <u>Jeffers v. Gomez</u>, 267 F.3d 895, 910 (9th Cir. 2001).  Where a constitutional violation occurs, a defendant is entitled to qualified immunity if he or she acted reasonably under the circumstances.  <u>Millender v. County of Los Angeles</u>, 564 F.3d 1143, 1148 (9th Cir. 2009).   The Supreme Court in <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), outlined a two-step approach to qualified immunity.   The first step requires the court to ask

whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier, 533 U.S. at 201;  Millender, 564 F.3d at 1148. "If the answer to the first inquiry is yes, the second inquiry is whether the right was clearly established: in other words, 'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Millender, 564 F.3d at 1148 (quoting Saucier, 533 U.S. at 201).   In Pearson v. Callahan,129 S.Ct. 808 (2009), the Supreme Court held that "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 818.

"When a qualified immunity claim cannot be resolved before trial due to a factual conflict, it is a litigant's responsibility to preserve the legal issue for determination after the jury resolves the factual conflict.   A Rule 50(a) motion meets this requirement." Tortu v. Las Vegas Metropolitan Police Dept., 556 F.3d 1075, 1083 (9th Cir. 2009); see also Norwood v. Vance, 572 F.3d 626, 631 (9th Cir. 2009) (defendant may waive qualified immunity claim by failing to raise it to the district court during or immediately after trial under Rule 50).

**VI.  Abandoned Issues**

None.

**VII.  Witnesses**

The following is a list of witnesses that the parties expect to call at trial, including rebuttal and impeachment witnesses.  NO WITNESS, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE CALLED AT TRIAL UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE." Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(10).

**A.  Plaintiff's Witnesses**

1.    Plaintiff

2.    Defendant G. Weiglein

3.      Defendant H. German.

**B.  Defendants' Witnesses**

1.      Correctional Sergeant J. Martinez, California State Prison, Corcoran

2.      Associate Warden R. Vella, California State Prison, Corcoran

3.      Correctional Officer B. Weiglein, California State Prison, Solano

4.      Correctional Officer G. Robles, California State Prison, Corcoran

5.      Correctional Officer A. Gonzalez, California State Prison, Corcoran

6.      Correctional Officer R. Luna, California State Prison, Corcoran

7.      Correctional Officer A. Musleh, California State Prison, Corcoran

8.      Correctional Captain L. Wood, Duel Vocational Institute

9.      Correctional Officer H. German, Kern Valley State Prison

10.     Correctional Officer F. Lemos, California Men's Colony

11.     M. Kimbrell, Litigation Coordinator, California State Prison, Corcoran

12.     J. Cordova, Litigation Coordinator, California State Prison, Corcoran

13.     Correctional Sergeant D. Scaife, In-Service Training Coordinator,
        California State Prison, Corcoran

14.     Correctional Sergeant A. Peterson, Assistant Armory Sergeant, California
        State Prison, Corcoran

15.     Custodian of Records for the Department of Corrections and
        Rehabilitation for Plaintiff's Central File and Unit Health Record.
        (Because Defendants have not identified the name of the witness,
        Defendants may not offer substantive testimony from the witness.  If
        Defendants wish to offer the unidentified witness solely to authenticate
        documents, defendants may use the witnesses identified only by title for
        that limited purpose.)

//

**VIII.  Exhibits**

The following is a list of documents or other exhibits that the parties expect to offer at trial.  NO EXHIBIT, OTHER THAN THOSE LISTED IN THIS SECTION, MAY BE ADMITTED UNLESS THE PARTIES STIPULATE OR UPON A SHOWING THAT THIS ORDER SHOULD BE MODIFIED TO PREVENT "MANIFEST INJUSTICE."  Fed. R. Civ. P. 16(e); Local Rule 16-281(b)(11).

**A.  Plaintiff's Exhibits**

Plaintiff's Exhibits are attached to his Pretrial Statement and are incorporated here.  In brief, Plaintiff's Exhibits are the following:

1.    602 Appeal Complaint against Defendants.

2.    Sgt. Martinez's report on the 602 Appeal Complaint.

3.    7219 medical report by M.T.A. F. Lemos.

4.    602 Appeal Complaint and responses.

5.    Interview request by M. Vela, report by L.L. Wood, and investigative report.

6.    114-D lock up order dated August 6, 2004 and lock up order dated November 5, 2004.

7.    602 Appeal Complaint and responses dated August 9, 2004.

8.    602 Appeal Complaint and responses dated March 20, 2005.

9.    Plaintiff's inmate trust account statement.

10.   Three Photo Drawings of Cell #28.

11.   Rules of the California Code of Regulations, Title 15 §§ 3004, 3268, 3271, 3391, and new §§ 3268(c), 3268.1(d) through 3268.1(d)(2).

**B.  Defendants' Exhibits**

1.    Inmate Appeal Form 602 Log Number COR-04-1210.

2.    CDC Form 7219, of Plaintiff, dated March 9, 2004.

3.    CDC Form 128-B, regarding Plaintiff's refusal to exit his cell, signed by Officer Weiglein, A. Gonzalez, and Sergeant J. Martinez.

4.    CDC Form 115 Log Number 4A4-04-03-11 and 4A4-04-03-11RR, including

Investigative Reports (only to be used for impeachment purposes, if needed.)

5.     CDC 114-A Log Book of Plaintiff's Housing Status, January through April 2004.

6.     Medical and Psychiatric Records, including Practitioner Progress Notes and Orders, Prescriptions, and Medication Administration Records, between January and May 2004.

7.      Photographs and Diagrams of Corcoran State Prison Building 4A2R, the building, hallways, rotunda, office, cells, and food ports.

**IX.  Discovery Documents To Be Used At Trial (Answers To Interrogatories And Responses To Requests For Admissions)**

**A. Plaintiff's Discovery Documents**

1.     Plaintiff's deposition from April 21, 2008.

2.     Defendant H. German's response to Plaintiff's request for admissions, set one, dated August 29, 2008.

3.     Defendant B. Ewiglein's admission set one, dated August 29, 2008.

4.     Defendant H. German's response to interrogatories dated March 5, 2008.

**B.  Defendant' Discovery Documents**

1.     Plaintiff's deposition transcript.

**X.  Further Discovery or Motions**

No further discovery or motions are anticipated.

Even though discovery is closed, all parties are reminded of their continuing obligation to update all discovery responses previously made if that party becomes aware of new information or becomes aware that an answer in a previous response is incomplete or incorrect. Fed. R. Civ. P. 26(e)(2).

If any party intends to file motions in limine, the procedure and time requirements are set forth below.

## XI.  Stipulations

The parties have not entered into any stipulations.

Plaintiff offers to stipulate to the following facts:

1.      The authenticity of the signatures on Plaintiff's Exhibits A through J.

2.      An agreement that if Defendant German had not charged Plaintiff with attempted battery, Plaintiff would not have received an additional nine month SHU term.

3.      A stipulation that his drawings are accurate.

4.      A stipulation that Defendant Weiglein had a duty to protect Plaintiff from harm.

## XII.  Amendments/Dismissals

None.

Plaintiff has stated his belief that a First Amendment claim is contained in this action.  The court's order, finding the complaint stated a claim, only found the complaint stated an Eighth Amendment and Fourteenth Amendment claim.[1]   The court has reviewed the complaint and finds no First Amendment Claim is clearly alleged in the complaint.

## XIII.  Settlement Negotiations

While Plaintiff believes a settlement conference would be helpful, Defendant believe settlement negotiations would be fruitless.

## XIV.  Agreed Statement

No party believes that a presentation of some or all of the evidence by agreed statement is feasible or advisable.

---

[1]  The Fourteenth Amendment claims were dismissed.

**XV.  Separate Trial Of Issues**

Plaintiff seeks to have this trial separated into five specific questions.   The court declines to do so.   However, as is this court's custom, the court will bifurcate the amount of any punitive damage award.

**XVI.  Impartial Experts - Limitation Of Experts**

Plaintiff believes that the appointment by the court of an impartial expert would be helpful.   Defendants do not believe appointment by such an expert is advisable.

The court can appoint an impartial expert pursuant to Rule 706 of the Federal Rules of Evidence.   The Ninth Circuit has found that Rule 706 only allows the court to appoint a neutral expert.  Students of California School for the Blind v. Honig, 736 F.2d 538, 549 (9th Cir. 1984), *reversed on other grounds by* 471 U.S. 148 (1985).   Such an expert witness may be appropriate if the evidence consists of complex scientific evidence.  McKinney v. Anderson, 924 F.2d 1500, 1511 (9th Cir. 1991).   Pursuant to Rule 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Fed.R.Evid. 702.

Given the issue in the case are excessive force, the court does not believe an expert to assist the court or jury on scientific, technical, or other specialized knowledge will assist the court or jury.   It appears, Plaintiff may be seeking an expert on prison guards' code of silence because he is proceeding in forma pauperis and is, presumably, unable to compensate an expert witness.  The Supreme Court has declared that "the expenditure of public funds [on behalf of an indigent litigant] is proper only when authorized by Congress"  United States v. MacCollom, 426 U.S. 317, 321 (1976).  The Ninth Circuit has found that the in forma pauperis statute, 28 U.S.C. § 1915, does not provide for the payment of fees or expenses for witnesses.  See  Dixon v. Ylst, 990 F.2d 478, 480 (9th Cir. 1993); Tedder v. Odel, 890 F.2d 210, 211 (9th Cir. 1989).  While 28 U.S.C. 1915 provides for service to an indigent litigant witnesses, it does not waive payment of fees or expenses for those witnesses.  Hadsell v. C.I.R., 107 F.3d 750, 752 (9th

Cir. 1997).  The court has reviewed the in forma pauperis statute and finds, as with other

witnesses, the in forma pauperis statute does not authorize the expenditure of public funds for the

appointment of an expert witness.  See 28 U.S.C. § 1915.  See Jimenez v. Sambrano,  2009 WL

653877 (S.D.Cal. 2009); Trimble v. City of Phoenix Police Dept., 2006 WL 778697 (D.Ariz.

2006).  Thus, the court declines to appoint an expert witness.


**XVII.  Attorneys' Fees**

        Plaintiff will seek attorney's fees if he obtains an attorney.


**XVIII.  Further Trial Preparation**

    **A.  Telephonic Trial Confirmation Hearing**

        A telephonic trial confirmation hearing is set for July 26, 2010, at 3:00 p.m.

Counsel for defendants is directed to arrange for telephone contact with Plaintiff Hackworth, and

shall initiate the call to (559) 499-5669.  At the telephonic hearing, the court will address any

pretrial matter raised by the parties.

    **B.  Motions In Limine Hearing and Briefing Schedule**

        Any party may file a motion in limine.  The purpose of a motion in limine is to

establish in advance of the trial that certain evidence should not be offered at trial.  Although the

Federal Rules do not explicitly provide for the filing of motions in limine, the court has the

inherent power to hear and decide such motions as a function of its duty to expeditiously manage

trials by eliminating evidence that is clearly inadmissible for any purpose.  Luce v. United States,

469 U.S. 38, 41 n. 4 (1984); Jonasson v. Lutheran Child and Family Services, 115 F. 3d 436, 440

(7th Cir. 1997).  The court will grant a motion in limine, and thereby bar use of the evidence in

question, only if the moving party establishes that the evidence clearly is not admissible for any

valid purpose.  Id.; Hawthorne Partners v. AT & T Technologies, Inc., 831 F. Supp. 1398, 1400

(N.D. Ill. 1993).

        All motions in limine must be served on the other party or parties, and filed with

the court, by August 2, 2010.  Any motion in limine must clearly identify the nature of the

evidence that the moving party seeks to prohibit the other side from offering at trial.

Any opposition to a motion in limine must be served on the other party or parties, and filed with the court, by August 16, 2010.

If any party files a motion in limine, the court will hear and decide such motions on the morning of trial at 8:30 a.m.  Any motion in limine previously filed by a party will be resolved at that time.

Whether or not a party files a motion in limine, that party may still object to the introduction of evidence during the trial.

**C.  Duty of Counsel to Pre-Mark Exhibits**

The parties are ordered to confer no later than June 2, 2010 for purposes of pre-marking and examining each other's exhibits.  All joint exhibits must be pre-marked with numbers preceded by the designation JT/-- (e.g., JT/1, JT/2).  All of Plaintiff's exhibits shall be pre-marked with numbers.  All of Defendants' exhibits shall be pre-marked with letters.

1.   Counsel shall create four (4) complete, legible sets of exhibits in binders as follows:

(a)   Two sets of binders to be delivered to Courtroom Clerk Harold Nazaroff by May 20, 2010, one for use by the Courtroom Clerk and the other for the court; and

(b)   One set for each counsel's own use.

If the parties desire, they may have a fifth set of binders to be used for the purposes of questioning witnesses.

2.   Counsel are to confer and make the following determination with respect to each proposed exhibit to be introduced into evidence, and to prepare separate indexes - one listing joint exhibits, and one listing each party's separate exhibits:

(a)   Duplicate exhibits, i.e., documents which both sides desire to introduce into evidence, shall be marked as a joint exhibit, and numbered as directed above.  Joint exhibits shall be listed on a separate index, and shall be admitted into evidence on the motion of any party, without further

foundation.

(b)   As to exhibits that are not jointly offered, and to which there is no objection to introduction, those exhibits will likewise be appropriately marked, e.g., Plaintiffs' Exhibit 1 or Defendants' Exhibit A, and shall  be listed in the offering party's index in a column entitled "Admitted In Evidence."  Such exhibits will be admitted upon introduction and motion of the party, without further foundation.

(c)   Those exhibits to which the only objection is a lack of foundation shall be marked appropriately, e.g., Plaintiffs' Exhibit 2 - For Identification, or Defendants' Exhibit B - For Identification, and indexed in a column entitled "Objection Foundation."

(d)   Remaining exhibits as to which there are objections to admissibility not solely based on a lack of foundation shall likewise be marked appropriately, e.g., Plaintiffs' Exhibit 3 - For Identification or Defendants' Exhibit C - For Identification, and indexed in a third column entitled "Other Objection" on the offering party's index.

3.   Each separate index shall consist of the exhibit number or letter, a brief description of the exhibit, and the three columns outlined above, as demonstrated in the example below:

INDEX OF EXHIBITS

| EXHIBIT # | DESCRIPTION | ADMITTED IN EVIDENCE | OBJECTION FOUNDATION | OTHER OBJECTION |
|-----------|-------------|----------------------|----------------------|-----------------|

Two sets of the completed joint index and the separate indexes shall be delivered to the Courtroom Clerk with the two sets of binders.

The court has no objection to counsel using copies.  However, the copies must be legible.  If any document is offered into evidence that is partially illegible, the court may sua sponte exclude it from evidence.

//

**D.  Discovery Documents**

By August 26, 2010, each party shall file a list of all discovery documents the party intends to use at trial.  The list shall indicate whether each discovery document has previously been lodged with the Clerk.  If the discovery document has not been previously lodged, the party shall so lodge the document with the Courtroom Clerk by August 26, 2010.

**E.  Trial Briefs**

The parties are directed to file and serve a Trial Brief by August 6, 2010.  Local Rule 285.  The parties need not include in the Trial Brief any issue that is adequately addressed in a motion in limine, or in an opposition brief to a motion in limine.  Any response to a Trial Brief shall be filed and served by August 20, 2010.

**F.  Voir Dire**

The parties shall file and serve proposed voir dire questions, if any, by August 26, 2010.

Further, in order to aid the court in the proper voir dire examination of the prospective jurors, counsel should lodge with the court on the first morning of trial a list of all prospective witnesses, including rebuttal witnesses, that counsel reasonably expect to call.  The purpose of the lists is to advise the prospective jurors of possible witnesses to determine if a prospective juror is familiar with any potential witness.

**G.  Agreed Summary Of The Case**

The parties shall lodge with the Courtroom Clerk a joint agreed summary of the case, briefly outlining the positions of the parties by August 26, 2010.  The summary will be read to the jury panel at the outset of the trial solely for the purposes of assisting in the jury selection process.  The contents of the summary shall not be deemed to be evidence or an admission or stipulation by a party as to any contested fact or issue.

**H.  Proposed Jury Instructions**

The parties shall file and serve proposed jury instructions by August 26, 2010.

All proposed jury instructions shall be in duplicate.  One set shall indicate the party proposing the instruction, with each instruction numbered or lettered, shall cite supporting

authority, and shall include the customary "Given, Given as Modified, or Refused," showing the court's action with regard to each instruction.  The other set shall be an exact copy of the first set, but shall be a "clean" copy that does not contain the identification of the offering party, instruction number or letter, supporting authority, or reference to the court's disposition of the proposed instruction.

The parties are ordered to confer after the trial confirmation hearing to determine which instructions they agree should be given.  As soon as possible thereafter, the parties shall submit a list of joint, unopposed instructions.  As to those instructions to which the parties dispute, the court will conduct its jury instruction conference during trial at a convenient time.

### I.  Proposed Verdict Form

The parties shall file and serve a proposed verdict form by 4:00 p.m. on August 26, 2010.

### J.  Use Of Videotape and Computers

Any party wishing to use a videotape for any purpose during trial shall lodge a copy of the videotape with the Courtroom Clerk by August 26, 2010.  If a written transcript of audible words on the tape is available, the court requests that the transcript be lodged with the court, solely for the aid of the court.

If counsel intends to use a laptop computer for presentation of evidence, they shall contact the courtroom deputy clerk at least one week prior to trial.  The courtroom deputy clerk will then arrange a time for counsel to bring the laptop to the courtroom, and meet with a representative of the Information and Technology Department and receive a brief training session on how counsel's equipment interacts with the court's audio/visual equipment.  If counsel intends to use PowerPoint, the resolution should be set no higher than 1024 x 768 when preparing the presentation.

### K.  Morning Conferences During Trial

During the trial, it is the obligation of counsel to meet with the court each morning to advise the court and opposing counsel as to what documents are proposed to be put into evidence that have not previously been admitted by stipulation, court order, or otherwise ruled

upon.  The court will rule on those documents, to the extent possible, prior to the commencement of trial each day out of the presence of the jury.  If the ruling depends upon the receipt of testimony, the court will rule as requested upon the receipt of such testimony.

The court shall consider any other legal matter at morning conferences as well. The court does not wish to recess the trial to hear legal argument outside of the presence of the jury, and proper preparation by counsel will eliminate the need for that result.

### L.  Order Of Witnesses

In order to make the trial operate efficiently and smoothly, each counsel has the continuing obligation to advise opposing counsel as to what witnesses he or she intends to call at each trial session.

## XIX.  Objections to Pretrial Order

Any party may, within ten (10) calendar days after the date of service of this Order, file and serve written objections to any of the provisions of this Order.  Such objections shall specify the requested modifications, corrections, additions or deletions.

## XX.  Rules of Conduct During Trial

### A.  General Rules

1.  All participants in the trial shall conduct themselves in a civil manner.  There shall be no hostile interchanges between any of the participants.

2.  All oral presentations shall be made from the podium, unless otherwise permitted by the court.

3.  Sidebar conferences are discouraged.  Legal arguments or discussion of issues outside the presence of the jury should be done during recesses.

4.  Counsel shall advise their respective clients and witnesses not to discuss any aspect of the case in the common areas of the courthouse accessible to the jurors, such as the lobby, the elevators, the hallways and the cafeteria.

//

**B.  Jury Selection**

1.      The court will conduct voir dire to be supplemented by any written questions submitted by counsel prior to trial and after the court has concluded its questioning of the jury panel.  In some circumstances, the court may allow brief direct questioning by counsel.

**C.  Opening Statements**

1.      Counsel may use visual aids in presenting the opening statement.  However, any proposed visual aids shall be shown to opposing counsel before opening statement.

**D.  Case in Chief**

1.      Counsel shall have his/her witnesses readily available to testify so that there are no delays in the presentation of evidence to the trier of fact.

2.      At the close of each trial day, counsel shall disclose his/her anticipated witnesses and order of presentation for the next day, so that any scheduling or evidentiary issues may be raised at that time.

**E.  Witnesses**

1.      Before approaching a witness, counsel shall secure leave of court to approach the witness.

2.      Before approaching a witness with a writing, counsel shall first show the writing to opposing counsel.

**F.  Exhibits**

1.      All exhibits shall be marked and identified in accordance with the instructions in the Pretrial Order.

2.      An exhibit shall not be published to the jury until it has been admitted into evidence and counsel has secured leave of court to publish the exhibit.

3.      The court usually will conduct an on the record review of the exhibits that have been admitted in evidence at the conclusion of each party's case in chief and after each party has rested its entire case.

**G.  Objections**

1.      No speaking objections or arguments are permitted in the presence of the jury.  Counsel shall state the specific legal ground(s) for the objection, and the court will rule based upon the ground(s) stated.  The court will permit counsel to argue the matter at the next recess.

2.      The court will not assume that any objection made also implies with it a motion to strike an answer that has been given.  Therefore, counsel who has made an objection, and who also wishes to have an answer stricken, shall also specifically move to strike the answer.

**H.  Closing Argument**

1.      Counsel may use visual aids in presenting the closing argument.  However, any proposed visual aids shall be shown to opposing counsel before closing argument.

FAILURE TO COMPLY WITH ALL PROVISIONS OF THIS ORDER MAY BE GROUNDS FOR THE IMPOSITION OF SANCTIONS, INCLUDING POSSIBLE DISMISSAL OF THIS ACTION OR ENTRY OF DEFAULT, ON ANY AND ALL COUNSEL AS WELL AS ON ANY PARTY WHO CAUSES NON-COMPLIANCE WITH THIS ORDER.

IT IS SO ORDERED.

**Dated:    April 28, 2010**                         **/s/ Anthony W. Ishii**
                                               CHIEF UNITED STATES DISTRICT JUDGE